**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

DONALD JONES,

        Petitioner,

v.                                                            Civ. No. 2:22-cv-02205-MSN-tmp

KEVIN GENOVESE,

        Respondent.

**ORDER DIRECTING CLERK TO MODIFY DOCKET; DENYING AND DISMISSING
§ 2254 PETITION WITH PREJUDICE; DENYING A CERTIFICATE OF
APPEALABILITY; CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN
GOOD FAITH; AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON
APPEAL**

On March 30, 2022, Petitioner Donald Jones, Tennessee Department of Correction prisoner number 273297, an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee, filed a *pro se* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1, "§ 2254 Petition"). The Court ordered Respondent Warden to file a response.[1] (ECF No. 8.) Respondent filed an answer (ECF No. 15) and the state court record (ECF No. 12). Petitioner did not file a reply, and the time to do so has expired.

After review, the Court **DENIES** and **DISMISSES** Petitioner's claims because they are without merit, not cognizable on federal habeas review, or procedurally defaulted.

---

[1] The Court **DIRECTS** the Clerk to modify the docket to record Respondent as Brandon Watwood, the Warden at the NWCX, and to remove Kevin Genovese as a party to this action. *See* Fed. R. Civ. P. 25(d); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (explaining that "in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held").

### A. **Procedural History**

On November 5, 2010, a jury convicted Petitioner of first degree murder and especially aggravated burglary. (ECF No. 12-1 at PageID 108.) The state trial court sentenced Petitioner to 30 years of imprisonment for especially aggravated burglary and ordered the sentence to be served consecutively to the automatic life sentence Petitioner received for his first degree murder conviction. (*Id*. at PageID 132–33.)

Petitioner filed a direct appeal to the Tennessee Court of Criminal Appeals ("TCCA"). *State v. Jones,* No. W2011-00973-CCA-R3CD, 2012 WL 3590363, at *1 (Tenn. Crim. App. Aug. 21, 2012). Petitioner challenged the sufficiency of the evidence supporting his convictions and argued that the state trial court erred in instructing the jury on flight. *Id*. at *5–10. The TCCA affirmed the judgments of the state trial court. *Id*. at *10. The Tennessee Supreme Court denied discretionary review. (ECF No. 12-16.) Petitioner did not file a petition for writ of certiorari with the United States Supreme Court.

Petitioner filed a *pro se* petition for state post-conviction relief on January 7, 2014. (ECF No. 12-17 at PageID 1432–43.) Petitioner alleged ineffective assistance of counsel on several grounds. (*Id*. at PageID 1435.) Petitioner filed amended petitions through appointed counsel. (*Id*. at PageID 1447–53, 1460–64.) The second amended petition incorporated the claims from Petitioner's *pro se* petition. (*See id*. at PageID 1461–63.)

The state post-conviction trial court held an evidentiary hearing on the second amended petition and denied relief in a written order. (*Id*. at PageID 1466–93.) The TCCA affirmed the denial of habeas relief. *Jones v. State,* No. W2020-00421-CCA-R3-PC, 2021 WL 3662422, at *9 (Tenn. Crim. App. Aug. 18, 2021). The Tennessee Supreme Court denied Petitioner's application for permission to appeal on December 9, 2021. (ECF No. 12-24.)

Petitioner filed the instant § 2254 Petition on March 30, 2022. (ECF No. 1.) Petitioner alleges that there is insufficient evidence to support his convictions, that the state trial court erred in instructing the jury on flight, that trial counsel was ineffective for failing to investigate Petitioner's alibi witness, and that trial counsel was ineffective for failing to request a jury instruction on accomplice testimony. (*Id*. at PageID 5–11.) Petitioner also seeks to raise claims of ineffective assistance of counsel from his *pro se* state habeas petition that were "not appealed or adjudicated at no fault of [P]etitioner's." (*Id*. at PageID 4; ECF No. 1-1 at PageID 20.)

## B. <u>Trial Proceedings</u>

In its decision affirming Petitioner's convictions and sentences, the TCCA recited the facts and evidence presented at Petitioner's trial as follows:

> [Petitioner] and two accomplices were intercepted by the victim, Tony Wood, during a burglary of the victim's home.[2] During the ensuing shoot-out, the victim and one of the accomplices were killed, and [Petitioner] was shot and wounded.
>
> Cortez Jones testified that he and William Mathis stole a truck in Mississippi on October 23, 2008. Upon discovering that the truck did not contain anything of value, Cortez called his cousin [Petitioner], who had previously told him that he needed a stolen vehicle.
>
> Cortez took the stolen truck to his mother's home in Memphis. Shortly thereafter, [Petitioner], Alvin Walker, and Derrick Anderson arrived at the house in [Petitioner's] Dodge Intrepid. [Petitioner] offered Cortez and Mathis drugs in exchange for the truck. Then Cortez called his friend, the victim, and told the victim that he had the money he owed him. At the conclusion of the conversation, [Petitioner] asked Cortez what the victim was doing, and Cortez told him that the victim was at work. Cortez said that he knew that [Petitioner] and Walker had wanted to steal from the victim for a long time because the victim had drugs and money in his home. Cortez said he had tried to warn the victim about [Petitioner] on a prior occasion. When [Petitioner], Walker, and Anderson heard that the victim was at work, they decided to burglarize the victim's home. Cortez said that he refused to help them with the burglary because he viewed the victim as a father figure. Cortez said that he did not warn the victim about the impending burglary that particular day because the victim was at work.

---

[2] Because Petitioner and two trial witnesses share the last name "Jones," the Court will refer to the witnesses by their first names, when necessary, to avoid confusion.

Walker and Anderson drove to the victim's house in the stolen truck, and [Petitioner] followed them in his Dodge Intrepid. Cortez said he knew that [Petitioner] usually carried a Tech Nine, an automatic weapon. [Cortez] also observed Walker carrying a .38 revolver the day of the offense.

Shortly after 3:00 p.m., Cortez received a call from [Petitioner] from an unfamiliar number. [Petitioner] informed Cortez that he had been shot in a gun fight and needed help. [Petitioner] told Cortez, "Man, that n[——] was at home—he was at home, Cuz [sic]. He shot [Walker], and I had to reach around [Walker] and shoot on him." Cortez said he was unable to help [Petitioner] and discovered that night that the victim had died in the gun fight. Cortez later identified [Petitioner], Walker, and Mathis from photo lineups. Cortez said he confessed to stealing the truck at the time that he told the police about [Petitioner's] involvement in the victim's death. [Cortez] said that the State had not given him an agreement regarding his theft case in exchange for testifying against [Petitioner]. [Cortez] also said he had already served some time in prison for stealing the truck and was currently on parole for that offense.

On cross-examination, Cortez admitted that he knew [Petitioner] would want to know whether the victim was home the day of the offense. [Cortez] also admitted that he did not warn the victim about the impending burglary. Cortez acknowledged that he had been originally investigated for the charge of first degree felony murder of the victim but that this charge had been dropped after he gave his statement to police. Moreover, [Cortez] admitted that he owed money to the victim at the time of the victim's death but denied that he was going to share in the proceeds of the victim's burglary. Cortez said he entered a guilty plea to theft of property regarding the truck he stole and admitted that he could have received a considerably harsher sentence for his offense than the one he received pursuant to his plea agreement.

Erika Jones, Cortez's sister and [Petitioner's] cousin, testified that she saw Cortez, Mathis, [Petitioner], Walker, and Anderson at her mother's home on October 23, 2008. [Erika] also said that [Petitioner's] car, a burgundy Dodge Intrepid, was at her mother's house that day. Erika also observed a truck, with identifying letters on the back, that was parked in her mother's backyard. [Erika] later saw Mathis give a crowbar to [Petitioner], who handled it with the sleeve of his coat so that he would not touch it with his hands. [Petitioner] then gave the crowbar to Walker, who put it behind the passenger seat of the truck. At some time after 3:00 p.m., Erika saw [Petitioner] leave her mother's home in his car and then saw Walker and Anderson follow [Petitioner] in the truck. Later that day, [Erika] saw a photograph of the truck that had been parked in her mother's backyard on the 5:00 p.m. news during the story about the victim's murder. Erika later identified [Petitioner], Walker, and Mathis from photo lineups.

***

4

Celia Ruiz, the victim's next-door neighbor, testified that she was doing laundry when she heard several gunshots from the direction of the victim's home. She walked outside and observed an African-American male with dark skin shooting a revolver at the victim. The dark-skinned man got into the passenger side of a truck before it drove away. She said she was unable to see the individual driving the truck. Ruiz said that she never saw the victim fire a gun and that the victim did not have a weapon in his hand at the time of the shooting.

***

Malinda Jordan, who lived a short distance away from the victim, testified that between 3:15 and 3:30 p.m. on October 23, 2008, she saw a truck with an obvious bullet hole park in front of her house. She then saw one African-American male fall out of the truck and drag himself across the street to the driver's side of a burgundy Dodge Intrepid that was parked across the street. Then she saw the driver of the truck get out of the vehicle, walk over to the Intrepid, and change clothes before getting into the passenger side of the Intrepid just before it drove away. When Jordan called 9–1–1, the operator told her that she could not move the truck because it had been involved in a recent homicide.

David Parks, a sergeant with the Memphis Police Department, testified that his investigation revealed that the victim believed that [Petitioner] and Cortez . . . "were trying to set [the victim] up." Sergeant Parks said that [Petitioner's] cell phone was found on the ground near the victim's front door. He said the police had received information that a witness had seen [Petitioner] crawling from a gray truck to a burgundy Dodge Intrepid, so they believed that [Petitioner] had sustained an injury to one of his legs. Consequently, Sergeant Parks had his officers check the local hospitals for individuals with leg injuries or gunshot wounds. He then expanded this search to hospitals outside Tennessee. Sergeant Parks said that shortly after the search was expanded, [Petitioner] was found at a hospital in Grenada, Mississippi. [Sergeant Parks] said that the police developed Walker as a suspect because certain individuals had seen him and [Petitioner] in a gray truck earlier that day. In addition, the police developed Anderson as a suspect based on the phone records from [Petitioner's] cell phone.

***

Peter Clinton, a special agent with the Mississippi Bureau of Investigation, testified that on October 23, 2008, he was called to a hospital in Grenada, Mississippi to investigate a case involving [Petitioner], who claimed that he had been shot and robbed on Interstate 55 after he had car trouble. Agent Clinton subsequently interviewed [Petitioner], who was unable to provide a description of the two men who shot and robbed him, was unable to provide a description of his car or the suspect's car, and was unable to identify the person who drove him to the hospital. Agent Clinton later discovered that the authorities in Southaven, Mississippi had issued a warning for an African-American male who might be seeking medical

5

treatment in Mississippi.  [Agent Clinton] then contacted the authorities in Southaven, Mississippi, who immediately contacted the Memphis Police Department about [Petitioner].

Derrick Anderson, a co-defendant who was also charged with first degree felony murder and especially aggravated murder in this case, testified that the State had not promised him anything in exchange for his testimony.  Anderson said that on October 23, 2008, [Petitioner] offered him fifty or sixty dollars to drive a truck for him.  [Petitioner], Walker, and Anderson then drove in [Petitioner's] Dodge Intrepid to a house located on East Trigg Avenue in South Memphis where a "little short fat guy" and a "tall skinny guy" that [Anderson] did not know were trying to get a white truck out of the mud in the backyard.  Once they freed the truck, Anderson heard Walker ask the short, fat man if he had a crowbar, and the man retrieved one from the trunk of his black Maxima and gave it to Walker.  [Petitioner] then told Anderson, "[Y]ou just drive that truck over here, man; we're fixin' to run in the [victim's] house and get whatever in there out of it and come on back[.]"  Anderson said he and Walker got into the truck and followed [Petitioner], who was driving his Dodge Intrepid, to an area a short distance away from the victim's home.  [Petitioner] parked his car and got into the truck with Anderson and Walker.  When they arrived at the victim's home, they parked the truck in front of the victim's house and walked to the front door.  Anderson remembered that [Petitioner] had his umbrella and cell phone in his hands as they approached the victim's house.  Walker pried open the front door with the crowbar, and as they were about to enter the residence, the victim walked out with a gun raised.  Anderson immediately turned and ran in the opposite direction.  Just before he was shot, Anderson looked behind him and saw [Petitioner] and Walker "tussling" with the victim over the gun.

After fleeing the scene, Anderson tried to call [Petitioner] but was unable to reach him.  Anderson later identified [Petitioner], Walker, Cortez Jones, and Mathis in photo lineups.  [Anderson] said he never saw [Petitioner] with a gun on October 23, 2008, although he saw Walker with an automatic pistol that day.  On cross-examination, Anderson acknowledged that he knew he would not be convicted of first degree murder after testifying against [Petitioner] at trial.

*Jones*, 2012 WL 3590363, at *1–5.

## C.  <u>State Post-Conviction Evidentiary Hearing</u>

The TCCA summarized the evidence presented at the hearing on Petitioner's state habeas

petition as follows:

Trial counsel, an assistant district public defender, testified that the Petitioner's case went to trial in 2010 and that he represented the Petitioner on the case over the course of a couple years.  He obtained discovery, provided it to the Petitioner, and then met with the Petitioner to discuss it.  Trial counsel met with the Petitioner often

in court and visited him in jail, but he did not recall how many times they met. He and co-counsel, another assistant district public defender, met with Petitioner together on a few occasions. Trial counsel testified that the Petitioner informed him that there was an alibi witness who could verify his presence in Mississippi at the time the offenses occurred, but the defense was never able to substantiate the alibi. According to trial counsel, the Petitioner's information about the alibi was consistent with [the Petitioner's] statement given to Mississippi authorities that he broke down on the side of the interstate, was robbed of his car, and ended up at a Mississippi hospital. [Trial counsel] recalled that the Petitioner could not provide details of the incident to a detective who interviewed [the Petitioner]. Trial counsel instructed an investigator with the public defender's office to interview witnesses for the defense, but the investigator was not able to locate the alibi witness. [Trial counsel] was not sure at the time of the [post-conviction evidentiary] hearing if the investigator ever met with the Petitioner. Trial counsel noted that the investigator prepared written reports pertaining to the investigation, and trial counsel made copies of the reports available to the Petitioner. Trial counsel could not recall if the Petitioner asked him to investigate one or more than one witness, but he testified that he would have attempted to investigate them. Trial counsel stated that he would have asked the Petitioner for contact information, and if the Petitioner did not have the contact information, trial counsel would have asked the investigator to try to locate the witnesses.

Trial counsel did not initially recall what involvement [Anderson] or [Cortez] had in the Petitioner's case. When asked why the defense did not argue that [Cortez] was actually an accomplice so that his testimony would have required corroboration, trial counsel replied, "I simply erred." [Trial counsel] did not recall if anyone was charged with the offenses prior to the Petitioner being charged and did not recall investigating if another perpetrator was involved. On cross-examination, trial counsel testified that he vaguely recalled that the State charged [Cortez] in the case and that the charges were dropped before trial.

***

According to the Petitioner, he first met trial counsel when he was indicted, and trial counsel provided the Petitioner with discovery. He testified that he saw trial counsel during court dates and that trial counsel visited him once at jail during the week of trial. The Petitioner stated that he wrote letters to trial counsel while incarcerated, but he only received one response that read, "I will come see you, I'm sorry I didn't come see you." When trial counsel visited the Petitioner, he introduced the Petitioner to co-counsel. The Petitioner stated that his discussions with trial counsel about his case involved people who implicated him in the burglary and shooting. [The Petitioner] testified that he asked trial counsel if he could speak to the investigator, but trial counsel told him that he could not do so. [The Petitioner] stated that he wanted an investigator to investigate his alibi, but he never met an investigator while his case was pending. [The Petitioner] explained that his alibi witness was Ms. Juanita Croff, who was from Mississippi. [The

Petitioner] informed trial counsel that [Croff] was from Clarksdale, Mississippi, and that they connected with each other in Grenada and Clarksdale. On cross-examination, [the Petitioner] stated that he also informed trial counsel that [Croff] worked at the Gold Strike Hotel. [The Petitioner] informed trial counsel he wanted to pursue at trial the alibi defense that he was dealing drugs in Mississippi at the time of the offenses and was shot in a drug-related robbery.

The Petitioner testified that he never received a report from an investigator and that trial counsel led him to believe that the defense was not using an investigator. According to the Petitioner, trial counsel never discussed the alibi witness with him or told him that the witness was not found. [The Petitioner] asked trial counsel about the alibi witness close to the time of trial, but trial counsel "had nothing for [him]." The Petitioner testified that six years after his trial, [Croff] met with his prior post-conviction attorney, who recorded a conversation with [Croff]. The attorney no longer practiced law.

On cross-examination, the Petitioner acknowledged that [Croff] was not with him at the time he was shot on the side of an interstate in Mississippi. The Petitioner explained that he was with [Croff] until between noon and 2:00 p.m. on that day and that they "split up" before going to make the drug deal because she did not accompany him to make drug deals. [The Petitioner] testified that he and [Croff] used to call each other and meet up, but he did not know what her number was at the time he was arrested for the offenses and was unable to provide it to counsel. [The Petitioner] did not give trial counsel the number he had used to call her previously. [The Petitioner] testified that he had been to her house before, but he did not know [Croff's] address and did not provide it to counsel. When asked whether he provided the information to co-counsel when trial counsel included co-counsel on a meeting, the Petitioner stated that he did not know who co-counsel was and that it was a week before trial at that time.

Jones, 2021 WL 3662422, at *4–5.

## LEGAL STANDARDS

### A.  Federal Habeas Review

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the prisoner's claim was "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Habeas corpus relief shall not be granted on any claim that was adjudicated on the merits in state court unless the decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts" based on evidence presented in state court. § 2254(d)(1)–(2).

A state court's decision is contrary to federal law when it reaches an opposite conclusion on a question of law that the Supreme Court previously decided or if the state court confronts materially indistinguishable facts from a relevant Supreme Court precedent and reaches an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The adjudication must be "diametrically different" or "mutually opposed" to the relevant Supreme Court precedent. *Id*. Conversely, "a run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id*. at 406.

An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. The state court's application must also be unreasonable. *Id*. An "unreasonable application" of federal law is one "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

To show that a state court's factual determination was unreasonable for purposes of § 2254(d)(2), it is not enough that "the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010).

### B. Exhaustion

"A federal court may not grant a writ of habeas corpus unless the applicant has exhausted all available remedies in state court." *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (citing 28 U.S.C. § 2254(b)(1)(A)). In Tennessee, a petitioner exhausts state remedies on a claim when the claim is presented to at least the TCCA. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (citing Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts." *Wagner*, 581 F.3d at 414 (citation omitted). "Fair presentation" requires the petitioner to provide the state courts with the "opportunity to see both the factual and legal basis for each claim." *Id*. at 414–15. While a petitioner need not cite "chapter and verse" of federal constitutional law to fairly raise a claim, the petitioner must "make a specific showing of the alleged claim." *Id*. at 415 (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)). In evaluating whether a petitioner has "fairly presented" a claim to a state appellate court, the controlling document is the inmate's brief. *See Baldwin v. Reese*, 541 U.S. 27, 39 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so").

### C. Procedural Default

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (noting interplay between exhaustion rule and procedural default doctrine). If a petitioner fails to properly exhaust a claim in state court and state law bars proper exhaustion, the petitioner has technically exhausted the claim through procedural default because "there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (quoting 28 U.S.C. § 2254(b)(1)(A)). Tennessee's one-year statute of limitations and "one-petition" rule on post-conviction petitions generally prevent a return to state court to litigate any additional constitutional claims. *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one-petition" rule); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (stating that a Tennessee prisoner "no longer ha[d] any state court remedies to exhaust" when he failed to present claim in initial post-conviction petition).

"As a general rule, claims forfeited under state law may support federal habeas relief only if the prisoner demonstrates cause for the default and prejudice from the asserted error." *House v. Bell*, 547 U.S. 518, 536 (2006). A petitioner establishes cause by "show[ing] that some objective factor external to the defense"—a factor that "cannot be fairly attributed to" the petitioner— "impeded counsel's efforts to comply with the State's procedural rule." *Davila v. Davis*, 582 U.S. 521, 528 (2017) (cleaned up). "To establish actual prejudice, a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to *his actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (cleaned up). The petitioner carries the burden of showing cause and prejudice. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999).

The Supreme Court has also recognized a "miscarriage of justice" exception to the

procedural default rule. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). This exception only applies in the "extraordinary case" and requires a petitioner to establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id*. at 321 (cleaned up). A credible claim of actual innocence "requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

## ANALYSIS

### A. Sufficiency of the Evidence

Petitioner argues that the TCCA's rejection of his challenge to the sufficiency of the evidence on direct appeal was contrary to or involved an unreasonable application of clearly established federal law. (ECF No. 1 at PageID 5.) Petitioner does not elaborate on his claim; he merely references the TCCA's opinion. (*See id*.)

Petitioner's challenge to the sufficiency of the evidence is governed by the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979). A petitioner's challenge to the sufficiency of the evidence in a federal habeas proceeding "face[s] a high bar" because it is "subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, the Court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The Court does not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

12

Second, even if the Court were to conclude that "no rational trier of fact could have agreed with the jury," the Court must still defer to the state appellate court's sufficiency determination as long as it is not "objectively unreasonable." *Coleman*, 566 U.S. at 651 (cleaned up). This means that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id*. (cleaned up).

Before the TCCA, Petitioner challenged his convictions on the basis that there was insufficient evidence corroborating the testimony of Derrick Anderson, who was a co-defendant and an accomplice. *Jones*, 2012 WL 3590363, at *5. He further argued that the testimony of Cortez Jones could not be used to corroborate Anderson's testimony because Cortez was also an accomplice and his testimony "was not independently corroborated." *Id*.

The TCCA, after correctly identifying *Jackson* and other relevant state authority on corroboration of accomplice testimony, summarized the State's evidence as follows:

> We conclude that there was sufficient corroboration of Anderson's testimony connecting [Petitioner] to the commission of the charged crimes. Cortez Jones testified that [Petitioner] had wanted to steal from the victim for a long period of time and took the stolen truck on October 23, 2008, for the purpose of burglarizing the victim. Erika Jones testified that [Petitioner], Walker, and Anderson as well as Cortez and Mathis were at her mother's home on October 23, 2008, and that she observed a truck in her mother's backyard that day. Erika saw Mathis give a crowbar to Petitioner, who handled the crowbar with the sleeve of his coat so that [Petitioner] would not touch it with his hands. [Erika] then saw [Petitioner] give the crowbar to Walker, who put it behind the passenger seat of the truck. Sometime after 3:00 p.m. that day, Erika saw [Petitioner] leave her mother's home in his Dodge Intrepid, with Walker and Anderson following him in the truck. [Erika] then saw a photograph of the truck that had been parked behind her mother's house during the story about the victim's death on the 5:00 p.m. news. Celia Ruiz, the victim's neighbor, testified that she saw a dark-skinned African-American male shooting a revolver at the victim before getting into the passenger side of a truck before the truck drove away. Shortly thereafter, Malinda Jordan, who lived near the victim, observed two injured African-American men abandon a truck with a bullet hole and get into a burgundy Dodge Intrepid that was parked across the street. Finally, Agent Clinton testified that he detained [Petitioner] in a Grenada, Mississippi hospital where he was being treated for a gunshot wound after his explanation for his injury did not make sense. Accordingly, sufficient

corroboration of Anderson's testimony existed.

Second, Petitioner argues that Cortez Jones was an accomplice, thereby precluding the use of Cortez Jones's testimony to corroborate Anderson's accomplice testimony and requiring Cortez Jones's testimony to be independently corroborated. Although the trial court instructed the jury that Anderson was an accomplice as a matter of law, it did not instruct the jury that Cortez Jones was an accomplice as a matter of law. Alternatively, the court did not instruct the jury that the issue of whether Cortez Jones was an accomplice was a question of fact to be determined by the jury and that if Cortez Jones was found by the jury to be an accomplice, corroboration of his testimony was required. *See* T.P.I.—Crim. 42.09 (15th ed. 2011). However, the record shows that [Petitioner] failed to specifically request a jury instruction for Cortez Jones on the issue of accomplice testimony. This court has held that when the trial court fails to instruct the jury on the issue of accomplice testimony, it is the defendant's responsibility to request such an instruction, and the defendant's failure to do so results in a waiver of the issue on appeal[.]

*** 

Accordingly, [Petitioner's] claim that Cortez Jones was an accomplice is waived. Absent [Petitioner's] request for this instruction, the trial court had no obligation to instruct the jury regarding whether Cortez Jones was an accomplice.

*Jones*, 2012 WL 3590363, at *8–9.

The TCCA's decision that the evidence was sufficient to support Petitioner's convictions does not contradict or involve an unreasonable application of controlling Supreme Court precedent. *See* § 2254(d)(1). Petitioner argued that there was insufficient evidence corroborating Anderson's testimony. *Jones*, 2012 WL 3590363, at *7. The TCCA acknowledged that under Tennessee law, "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." *Id*. (quoting *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)). As the TCCA noted, however, multiple witnesses corroborated Anderson's testimony. *Id*. at *8. Thus, assuming that Petitioner's challenge to Anderson's testimony under state law is cognizable as a sufficiency challenge under *Jackson*, the TCCA's application of *Jackson* is not "so lacking in justification" to warrant relief under § 2254(d)(1). *Richter*, 562 U.S. at 103.

To the extent that Petitioner seeks to argue that Cortez Jones was an accomplice whose testimony required independent corroboration and an instruction to the jury, such a claim, even if cognizable on habeas review, is procedurally defaulted. Petitioner raised the argument on direct appeal, and the TCCA concluded that the issue was waived as a matter of state procedural law because Petitioner "failed to specifically request a jury instruction for Cortez Jones on the issue of accomplice testimony." *Jones*, 2012 WL 3590363, at *8. "[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state [procedural] law is immune from review in the federal courts." *Wainwright v. Sykes,* 433 U.S. 72, 81 (1977); *see Coleman*, 501 U.S. at 729 (explaining that federal habeas review is barred when "the state judgment rests on independent and adequate state procedural grounds").

Petitioner also fails to satisfy his burden under § 2254(d)(2). Petitioner neither provides clear and convincing evidence that rebuts the TCCA's factual determinations nor shows how the TCCA's decision was based on an unreasonable determination of the facts. (*See* ECF No. 1 at PageID 5.) As such, he is not entitled to habeas relief under § 2254(d)(2).

### B. Flight Instruction

Petitioner argues that the TCCA's conclusion that there was sufficient evidence presented at trial to support the jury instruction on flight was contrary to or involved an unreasonable application of clearly established federal law. (ECF No. 1 at PageID 7.) Again, Petitioner does not identify the source of the TCCA's legal violation; he merely cites the TCCA's opinion. (*See id.*)

Petitioner argued on direct appeal that the state trial court should not have instructed the jury on flight "because there was no evidence that he went to Grenada, Mississippi, for any reason other than to seek medical treatment." *Jones*, 2012 WL 3590363, at *9. The TCCA considered

15

the issue as follows:

> "In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction." *State v. Berry*, 141 S.W.3d 549, 588 (Tenn. 2004). Sufficient evidence exists supporting a jury instruction on flight when there is evidence of "both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown." *State v. Burns*, 979 S.W.2d 276, 289-90 (Tenn. 1998) (internal quotation, emphasis, and citation omitted). The State may satisfy the subsequent hiding out, evasion, or concealment requirement by presenting proof from which a jury might infer that the defendant committed such acts. *State v. Terrance Wilks*, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832, at *4 (Tenn. Crim. App., at Jackson, Nov. 22, 1999) (citing *Payton*, 782 S.W.2d at 498; *Rogers v. State*, 455 S.W.2d 182, 186–87 (Tenn. Crim. App. 1970)).
>
> Upon review, we conclude that there was sufficient evidence presented at trial to support the jury instruction on flight. After burglarizing the victim's home and shooting the victim, [Petitioner] immediately fled the scene, abandoned the stolen truck, and traveled to Mississippi, where he was treated for a gunshot wound and gave a false story to law enforcement regarding the cause of his injury. These facts clearly support an inference that [Petitioner] fled the crime scene to avoid prosecution. Accordingly, the trial court did not err in instructing the jury on flight.

*Id.* at *10.

Generally, "errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981). "[S]ince it is not the function of a federal habeas court to correct errors in state law," a request for habeas relief based on a state court's failure to give a jury instruction based on its interpretation of state law is warranted only "under the most unusual circumstances." *Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

The TCCA's review of whether the state trial court properly instructed the jury on flight was conducted in accordance with Tennessee law, and the TCCA concluded that the state trial court properly gave the pattern charge on flight. *Jones*, 2012 WL 3590363, at *10. Petitioner has failed to show that his case presents an "unusual circumstance" where federal habeas relief is

16

warranted to correct an error of state law.  *See Bagby*, 894 F.2d at 795.  Petitioner's challenge to

the TCCA's rejection of his argument that the state trial court erred in instructing the jury on flight

is **DISMISSED** as not cognizable in federal habeas review.[3]

### C.  Ineffective Assistance of Counsel

Petitioner argues that trial counsel provided ineffective assistance by failing to locate and

interview a potential alibi witness and by failing to request an accomplice instruction for Cortez

Jones's trial testimony.  (ECF No. 1 at PageID 9, 11.)  Petitioner exhausted these claims by raising

them in his post-conviction appeal before the TCCA.  *See Jones*, 2021 WL 3662422, at *6.

Petitioner's claims of ineffective assistance of counsel are analyzed under the standard in

*Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* requires that Petitioner show two

elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance

prejudiced the defense."  *Id*. at 687.  If the petitioner fails to show either element, his claim fails,

and the Court's inquiry ends.  *Id*.

To establish deficient performance, a petitioner "must show that counsel's representation

fell below an objective standard of reasonableness."  *Id.* at 688.  When reviewing trial counsel's

performance, a court must make "every effort" to eliminate "the distorting effects of hindsight"

and "must judge the reasonableness of counsel's challenged conduct on the facts of the particular

case, viewed as of the time of counsel's conduct."  *Id*. at 689–90.  An attorney's "strategic choices"

are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to

---

[3] Petitioner does not argue that his claimed jury instruction error denied him a fundamentally fair trial in violation of his right to due process.  (*See* ECF No. 1 at PageID 7.)  Even if Petitioner's challenge to the flight instruction could be construed as a due process claim, it would be subject to dismissal because Petitioner failed to exhaust the issue before the TCCA and Tennessee's post-conviction procedural law would bar any attempt at proper exhaustion.  *See* § 40-30-102(a), (c).  As such, any due process claim that Petitioner could raise is procedurally barred from federal habeas review.  *See Coleman*, 501 U.S. at 732.

plausible options." *Id*. at 690–91.

The test for prejudice requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding [because] [v]irtually every act or omission of counsel would meet that test." *Id*. at 693. Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

On habeas review, the issue is not whether Petitioner has satisfied the *Strickland* standard, but rather, whether the state court's decision that *Strickland* was not met warrants relief under AEDPA's standards. *See Richter*, 562 U.S. at 105 ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). This results in a "doubly" deferential standard of review in federal habeas proceedings. *Id*. (internal quotation marks and citation omitted). When a *Strickland* claim is rejected on the merits by the state court, a petitioner "must demonstrate that it was necessarily unreasonable" for the state court to rule as it did in order to obtain habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

### *Failure to Investigate Alibi*

The TCCA addressed Petitioner's claim that counsel failed to conduct an adequate investigation into his potential alibi witness as follows:

> The Petitioner claims that counsel were ineffective by failing to locate and interview a potential alibi witness. The trial court credited trial counsel's testimony that he met with the Petitioner, discussed discovery with him, requested information from the Petitioner about the Petitioner's alibi, provided the information about the alibi witness to an investigator, and could not locate the witness with the investigator's assistance. *See Fields*, 40 S.W.3d at 456. Although the Petitioner asserts that he wanted to speak with an investigator personally, he conceded at the hearing that he provided trial counsel with all of the available information he had

18

about the alibi witness.  The Petitioner has failed to show that counsel's representation was deficient.  [Petitioner] has also failed to show prejudice because he did not call the alibi witness to testify at the hearing.  *Black v. State*, 794 S.W.2d 752, 758 (Tenn. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.").  Therefore, the Petitioner is not entitled to relief on this claim.

*Jones*, 2021 WL 3662422, at *7.

The TCCA's decision did not contradict *Strickland*'s performance and prejudice prongs. *See* § 2254(d)(1).  The TCCA correctly cited and applied both prongs to the facts of the case, *Jones*, 2021 WL 3662422, at *6–7, resulting in a "run-of-the-mill" state court decision, *Williams*, 529 U.S. at 406.  Petitioner provides no argument that the decision was not run-of-the-mill, and thus, he is entitled to no relief under the contrary-to clause.[4]  (*See* ECF No. 1 at PageID 9.)

The decision likewise did not involve an unreasonable application of *Strickland*'s two prongs.  *See* § 2254(d)(1).  The TCCA based its performance decision on *Strickland*'s rule that trial counsel must perform in an objectively reasonable manner when representing a defendant. *See Jones*, 2021 WL 3662422, at *6.  The TCCA relied on counsel's accredited testimony from the post-conviction hearing, which showed that he met with Petitioner, requested information about Petitioner's alibi, and provided the information to an investigator.  *Id*. at *7.  The transcript from the evidentiary hearing supports the TCCA's conclusion that counsel adequately investigated

---

[4] Petitioner cites *Caldwell v. Lewis*, 414 F. App'x 809 (6th Cir. 2011) and *Stewart v. Wolfenbarger*, 468 F.3d 338 (6th Cir. 2006), in support of his argument that the TCCA's rejection of his claim of ineffective assistance of counsel was contrary to or involved an unreasonable application of clearly established federal law.  (ECF No. 1 at PageID 9.)  Aside from the fact AEDPA deference is concerned with whether a state court's decision contravenes clearly established federal law as determined by the Supreme Court, not the Sixth Circuit, the circumstances in *Caldwell* and *Stewart* are distinguishable from Petitioner's case in that the alibi witnesses in those cases were known, readily available, and could have testified at trial, but were not subpoenaed by trial counsel.  *See Caldwell*, 414 F. App'x at 816; *Stewart,* 468 F.3d at 355–61.

Petitioner's alibi.[5]  (*See* ECF No. 12-18 at PageID 1517–18.)  The TCCA's application of the performance prong is "not so lacking in justification" to warrant relief under the unreasonable-application clause.  *Richter*, 562 U.S. at 103.

The same is true of the TCCA's application of *Strickland*'s prejudice prong.  The TCCA determined that Petitioner could not show prejudice under *Strickland* because "he did not call the alibi witness to testify" at his post-conviction hearing.  *Jones*, 2021 WL 3662422, at *7.  In other words, Petitioner did not present any evidence showing that, but for trial counsel's performance, there was a "reasonable probability" of a different outcome.  *Strickland*, 466 U.S. at 694.  Without any evidence of prejudice, the TCCA could not grant relief, which justifies its application of the prejudice prong.  *See Jones*, 2021 WL 3662422, at *7.

Petitioner does not contest the correctness of the TCCA's factual findings, nor does he

---

[5] Trial counsel testified at the post-conviction evidentiary hearing that he could not "remember specifics" about Petitioner's potential alibi witness, but he recalled that Petitioner "tried to present . . . some alibi, but we were never able to substantiate it."  (ECF No. 12-18 at PageID 1517.)  Trial counsel confirmed that there was an investigator on Petitioner's case and that the investigator tried to "track . . . down [the alibi] and was unable."  (*Id*.)  Trial counsel testified that the investigator prepared a written report on his findings and that counsel made copies of the report and shared it with Petitioner.  (*Id*. at PageID 1518.)  Trial counsel also testified regarding his process for locating alibi witnesses.  He explained that he would have "asked [Petitioner] for contact information or . . . anything about the person," and if there was no contact information, trial counsel testified that he "would ask [his] investigator to try and locate them."  (*Id*. at PageID 1520.)  Trial counsel explained that the investigator would first consult "MLGW records" before turning to "other methods" to "track people down."  (*Id*.)

Petitioner testified at the post-conviction hearing that he was "dealing drugs" in Mississippi at the time of the murder and that "the people [he] was dealing with" robbed him.  (*Id*. at PageID 1547.)  Petitioner testified that he "told trial counsel everything [he] knew at the time" about the robbers, but he admitted that he did not give trial counsel any names, nicknames, or phone numbers for the robbers even though Petitioner claimed that the robbers had called him to set up the drug deal.  (*Id*. at PageID 1558–59.)  Petitioner testified that prior to the drug deal, Petitioner was with Juanita Croff in Mississippi.  (*Id*. at PageID 1555.)  Petitioner testified that he knew that Croff worked at the Gold Strike Hotel, and when asked if he provided this information to trial counsel, Petitioner testified that he "told [trial counsel] everything [he] knew at the time."  (*Id*. at PageID 1556, 1571.)  Petitioner testified that he and Croff "used to call each other and meet up," but he admitted that he did not give Croff's phone number to trial counsel.  (*Id*. at PageID 1557.)

attempt to rebut the presumption of correctness with clear and convincing evidence. *See Ayers*, 623 F.3d at 308. Because the TCCA's factual findings are reasonable and supported by the record, Petitioner is not entitled to relief under § 2254(d)(2). *See id.*

### Failure to Request Accomplice Instruction

Petitioner argues that the TCCA's rejection of his claim that counsel was ineffective for failing to request an accomplice instruction "was contrary to . . . or involved an unreasonable application" of the standard in *Strickland*. (ECF No. 1 at PageID 11.) Petitioner generally cites the TCCA's decision, but he provides no other argument in support of his claim. (*See id.*)

Before the TCCA, Petitioner argued that trial counsel was ineffective for failing to request an accomplice instruction at trial, which would have required the State to corroborate the testimony of Cortez Jones. *Jones*, 2021 WL 3662422, at *7. The TCCA relied on *Strickland*'s prejudice prong and denied relief on the claim. *Id.* at *8. The TCCA noted that there was overwhelming evidence to corroborate Cortez's trial testimony, therefore, Petitioner could not "show that a failure to request the instruction was prejudicial." *Id.* The TCCA recounted the corroborating testimony as follows:

> [Erika] Jones, who was not an accomplice, testified that at her mother's home, she observed [William] Mathis give a crowbar to the Petitioner, who grabbed it with his coat sleeve so as to not touch it with his bare hand. The Petitioner then handed the crowbar to [Alvin] Walker, who placed it in the stolen truck. Sometime after 3:00 p.m., the Petitioner left the home in his burgundy Dodge Intrepid, while . . . Walker and [Derrick] Anderson left in the stolen truck. [Celia] Ruiz, the victim's neighbor, observed the shoot-out and saw the perpetrators enter a truck. Between 3:15 p.m. and 3:30 p.m., [Malinda] Jordan observed a truck with a bullet hole park in front of her house. A man fell out of the truck and dragged himself to a burgundy Dodge Intrepid, and the Petitioner's blood was recovered from the Intrepid. Law enforcement discovered a truck with a bullet hole in it still running near the victim's home, a crowbar inside the victim's home, pry marks on the victim's door, the Petitioner's cell phone outside of the victim's home, and the Petitioner's Dodge Intrepid, with his blood inside, at a Memphis apartment complex. The Petitioner's cell phone records reflected that he and . . . Anderson made several telephone calls to one another on the day of the victim's murder. Law enforcement suspected the

Petitioner of sustaining an injury to his legs, and the Petitioner was discovered in Grenada, Mississippi, seeking medical attention for gunshots wounds. The Petitioner's explanation of the origin of the wounds was implausible. We note that this court on direct appeal found the evidence sufficiently corroborated . . . Anderson's testimony. *Jones*, 2012 WL 3590363, at *8 (relying on the evidence above and also on Cortez Jones's testimony that the Petitioner "had wanted to steal from the victim for a long period of time and took the stolen truck on October 23, 2008, for the purpose of burglarizing the victim"). We conclude that the Petitioner has failed to establish prejudice because the evidence corroborated Cortez Jones's testimony implicating the Petitioner in the victim's murder. *See Shaw*, 37 S.W.3d at 903 (quoting *Bigbee*, 885 S.W.2d at 803). Accordingly, the Petitioner is not entitled to relief.

*Jones*, 2021 WL 3662422, at *8.

The above decision does not contradict *Strickland*. *See* § 2254(d)(1). The TCCA again correctly cited and applied *Strickland* to the facts of this case. *See Jones*, 2021 WL 3662422, at *6–8. Thus, the decision is "run-of-the-mill" and does not fall within § 2254(d)(1)'s contrary-to clause, and Petitioner does not argue otherwise. *See Williams*, 529 U.S. at 406.

Petitioner also fails to show that the TCCA unreasonably applied *Strickland*. *See* § 2254(d)(1). The TCCA bypassed the performance prong and considered whether Petitioner had carried his burden of showing that trial counsel's failure to request an accomplice instruction prejudiced the defense. *See Jones*, 2021 WL 3662422, at *8. The TCCA noted that there was "overwhelming" corroborating evidence to support Cortez Jones's testimony. *Id.* Thus, Petitioner could not show "that had the questioned accomplice instruction been given to the jury, there is a reasonable probability that [he] would have been acquitted." *Id.* (cleaned up). Based on the evidence presented at trial, the TCCA reasonably applied *Strickland*'s prejudice prong, and Petitioner is not entitled to relief based on an unreasonable application of federal law. *See* § 2254(d)(1).

Petitioner neither provides clear and convincing evidence that rebuts the TCCA's factual determinations nor shows how the TCCA's decision was based on an unreasonable determination

of these facts.  (*See generally* ECF No. 1 at PageID 11.)  As such, he is not entitled to relief under § 2254(d)(2).

### D.  Unexhausted Claims of Ineffective Assistance of Counsel

Petitioner seeks to raise other claims of ineffective assistance of counsel from his *pro se* state habeas petition that were "not appealed or adjudicated at no fault of [P]etitioner's." (ECF No. 1 at PageID 4.)  Petitioner claims that trial counsel was ineffective (1) "in the matter of Petitioner's right to testify"; (2) "in challenging the actual innocent [sic] matter"; (3) "in challenging excessive sentence under *Blakely-Apprendi*"; (4) "in challenging the imposition of the consecutive sentences"; (5) "in challenging to change of venue [sic] . . . due to the publicity of the case"; (6) "in challenging the lesser-included offenses"; (7) "in the matter of a plea"; and (8) "in challenging the fair jury panel."  (ECF No. 1-1 at PageID 20.)

Petitioner raised these claims of ineffective assistance of counsel in his *pro se* state habeas petition, and they were incorporated by appointed counsel in Petitioner's second amended petition. (ECF No. 12-17 at PageID 1435, 1461–63.)  The state post-conviction trial court made factual findings for the claims on which Petitioner presented evidence and rejected those claims on the merits.  (*Id.* at PageID 1480–91.)  All remaining claims were deemed waived based on Petitioner's failure to present evidence in support at the evidentiary hearing.  (*Id.* at PageID 1491.)

Petitioner did not raise the above-listed eight claims of ineffective assistance of counsel before the TCCA in his post-conviction appeal.  *See Jones,* 2021 WL 3662422, at *1.  Because Petitioner no longer has an available state court remedy to exhaust these claims, they are procedurally defaulted.  *See Coleman*, 501 U.S. at 732.

Petitioner states that the claims were "not appealed or adjudicated at no fault of [P]etitioner's."  (ECF No. 1 at PageID 4.)  Petitioner's statement, with the benefit of liberal

construction, seeks to excuse his procedural default under *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), which held that the ineffective assistance of post-conviction counsel may be cause for a procedural default of a claim of ineffective assistance of trial counsel.

To the extent that Petitioner relies on *Martinez*, to excuse his procedural default, he cannot. Petitioner's claims "were considered and rejected on the merits by the initial state post-conviction court," and *Martinez* does not apply "to cure any procedural default that may have occurred at the state appellate court." *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1139 (6th Cir. 2016). Thus, Petitioner's additional claims of ineffective assistance of counsel raised in his § 2254 petition are **DISMISSED** as procedurally defaulted.[6]

## APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2)–(3). A "substantial showing" is made when the petitioner

---

[6] Regardless of default, these claims of ineffective assistance of counsel are without merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (noting that 28 U.S.C. § 2254(b)(2) permits a federal court to "deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies"). Petitioner offers only conclusory allegations of ineffective assistance of counsel without evidence or sufficient factual allegations in support. (*See* ECF No. 1-1 at PageID 20, 25–28.) "Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).

demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a petition is denied on procedural grounds, the petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, reasonable jurists could not debate the correctness of the Court's decision to deny and dismiss the § 2254 Petition on the ground that the claims are either without merit, not cognizable, or procedurally defaulted. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Additionally, Federal Rule of Appellate Procedure 24(a)(1) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)–(5). In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in good faith. It is therefore **CERTIFIED**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith and leave to appeal *in forma pauperis* is **DENIED**.[7]

---

[7] If Petitioner files a notice of appeal, he must pay the full appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this Order. *See* Fed. R. App. P. 24(a)(5).

**IT IS SO ORDERED**, this 31st day of March, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE